Filed 4/13/22  In re Christopher F. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re CHRISTOPHER F., a Person Coming Under the Juvenile Court Law. | B314360 (Los Angeles County Super. Ct. No. 21CCJP02378) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. EDUARDO F., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Linda Sun, Judge.  Affirmed.

Terence M. Chucas, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Aileen Wong, Deputy County Counsel, for Plaintiff and Respondent.

The presumed father (Eduardo F.) appeals from the juvenile dependency court's July 8, 2021 order denying Eduardo's request for custody of Christopher F., his 16-year-old son. We affirm.

## BACKGROUND

Eduardo is the presumed father of Christopher (born in August 2004). Christopher's mother is A.P (mother). Eduardo has three children younger than Christopher, and mother has two other children, Aliana L. born in 2007 and Dominic P. (Junior) born in 2012. Until these proceedings were initiated, Christopher lived with mother, Junior's father (Dominic P., Sr.), and his younger half-siblings. This appeal involves only Christopher, the sole question being whether the juvenile court erred in refusing to place Christopher with Eduardo.

The Department of Children and Family Services (DCFS) became involved on April 25, 2021, based on a referral alleging that Dominic Sr. had physically abused Christopher. Christopher's maternal aunt (Myra O.) reported that another maternal aunt (Diana M.) received a voicemail message from Christopher that Dominic Sr. and Christopher's mother had been involved in a physical confrontation and that Dominic Sr. had punched Christopher in the stomach. Diana picked up Christopher and he was (and still is) staying with his maternal grandmother. The only charges against Eduardo were that he knew about mother's violent conduct, and about Dominic Sr.'s physical abuse of Christopher, yet allowed mother and Dominic Sr. to have unlimited access to Christopher.

Myra told DCFS that Eduardo had not been very involved in Christopher's life, and Christopher called Aliana's father "Dad." The social worker confirmed that Christopher would continue living with his maternal grandmother. Christopher told the social worker that his mother and Dominic Sr. drank alcohol, then argued, and he could hear Dominic Sr. hurting his mother. Christopher called the police, but they

2

left when they were told everything was all right. Dominic Sr. then attacked Christopher, but later apologized. Christopher's mother told the social worker that Eduardo has a history of violence.

Christopher called his father "Eddie" and they never had a father and son relationship. Christopher's mother admitted that she had been arrested for domestic violence in 2017. Mother told the social worker she had arranged for Christopher to stay with his maternal grandmother. Mother's estimate was that Eduardo had seen Christopher only 10 times during the 16 years of Christopher's life. The other children and friends confirmed the facts stated above. Eduardo knew nothing about Christopher's life, his exposure to violence, or his mother's drinking.

In May 2021, the juvenile court authorized DCFS to take Christopher, Aliana, and Junior into protective custody. DCFS then filed a Welfare and Institutions Code section 300, subdivisions (a), (b)(1) and (j)[1] petition for the three children, alleging (among other things) that Dominic Sr. had physically abused Christopher, that Dominic Sr. had a history of violent and assaultive behaviors, and that both mother and Dominic Sr. had a history of alcohol abuse rendering them incapable of caring for the children.

At the May 25, 2021 detention hearing (at which Eduardo did not appear and thus did not seek custody), the juvenile court found that DCFS had presented a prima facie case that Christopher was a child described by section 300. The court also found there was a threat of future physical and emotional harm, and no reasonable means to protect Christopher short of removal from his parents. DCFS was ordered to provide referrals for Eduardo. Christopher told the social worker he wanted to remain with his maternal grandmother and half-siblings, and that he did not want to live with Eduardo.

---

[1] All section references are to the Welfare and Institutions Code.

At the July 8, 2021 jurisdiction and disposition hearing, the court declared Christopher a dependent of the court, ordered the children removed from parental custody, and found it would be detrimental to the safety, protection, or physical or emotional well-being of Christopher to be returned to or placed with his mother, and found it would be detrimental to place Christopher with Eduardo because they had no relationship, Eduardo had not been present during most of Christopher's life, and because Christopher asked to be placed with his maternal grandmother and half-siblings.

The juvenile court found it was "not going to terminate jurisdiction as of now because [Eduardo] had indicated to the social worker that he honors Christopher's decision not to live with him . . . . [H]e was agreeable to [his son's] current placement." Eduardo admitted he had no knowledge about Christopher's home life, and no knowledge about Christopher's mother's drinking problem (although he admitted that when he visited the house, the refrigerator was full of beer, not food). Christopher said his relationship with his father was "very loose" and their visits were sporadic, sometimes years apart. For these reasons, the juvenile court concluded that placing Christopher with Eduardo was not the best plan, but said it would revisit the issue if the relationship improved. The court also found it would be detrimental to Christopher to be placed with Eduardo because they had not established a relationship.

Eduardo appeals, claiming Christopher should have been placed with him.

## DISCUSSION

The standard of review is not disputed. The parties agree that although the burden on DCFS in the trial court was to establish its charges by clear and convincing evidence, our review on appeal, although heightened, is for substantial evidence. (*Conservatorship of O.B.* (2020)

4

9 Cal.5th 989, 995-996 [where the standard of proof in the trial court is "clear and convincing evidence," the question on appeal is whether the record as a whole, viewed in the light most favorable to the prevailing party, contains substantial evidence from which a reasonable trier of fact could have found it highly probable that the fact was true].) Credibility calls are for the trial court, not for us. (*Ibid.*)

Section 361.2, subdivision (a) provides that when a previously noncustodial parent requests custody of a child who has been removed from the custodial parent, the child should be placed with the noncustodial parent unless the court find that "placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." Here, overwhelming evidence, including Eduardo's own admissions and his stated support for Christopher's choice to remain with his maternal grandmother and half-siblings, support the juvenile court's decision that, for now, Christopher should not be placed with Eduardo. Clear and convincing evidence supports the juvenile court's finding (*In re Luke M.* (2003) 107 Cal.App.4th 1412, 1426) that there is not now and never has been a father-son relationship between Eduardo and Christopher, that the emotional harm to Christopher would be extreme, and that Christopher himself wants to stay with his maternal grandmother and half-siblings. (*In re A.C.* (2020) 54 Cal.App.5th 38, 43.) The court considered not only the lack of contact between father and son, but the father's complete unawareness of the problems his son had been having. Christopher has bonded with his mother's family and barely knows his father. Eduardo's arguments on appeal amount to requests to us to reweigh the evidence, and that we will not do.

It is important to note that the juvenile court left the door open to revisiting this issue. Eduardo said he respected Christopher's decision to stay with his maternal grandmother. If Eduardo takes advantage of the services ordered for him and makes a genuine effort to get to know his son, the juvenile court will reconsider the placement issue. If

Eduardo genuinely wants a relationship with his son and custody, he should accept the juvenile court's invitation to take the steps necessary to establish his responsibility and his interest in Christopher's life.

**DISPOSITION**

The order is affirmed.

NOT TO BE PUBLISHED

VOGEL, J.*

We concur:

CHANEY, J.

BENDIX, Acting P. J.

---

* Retired Associate Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

6